**James G. WHEATLEY, Appellant,**

v.

**Elbert GLADDEN, Appellee.**

**No. 80–1409.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1981.

Decided Oct. 9, 1981.

Rehearing Denied Nov. 20, 1981.

Joseph F. Lentz, Jr., Baltimore, Md., for appellant.

Robert L. Ferguson, Jr. (Thomas J. Schetelich, Allen, Thieblot & Alexander, Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and PHILLIPS and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

James G. Wheatley, the plaintiff below, appeals the district court's judgment entered in favor of the defendant, Elbert Gladden, on claims arising from a leg injury Wheatley received while working on an oyster boat, the *Ida May*. Gladden owned the *Ida May*, but Kermit Travers was in charge of the daily operation; the trial court directed a verdict against Wheatley on his Jones Act claim and on his "maintenance and cure" claim, holding there was no employer/employee relationship between Gladden and Wheatley. The trial court submitted Wheatley's third claim—the alleged "unseaworthiness" of the *Ida May*—to the jury, and it found in favor of Gladden. Since the evidence required a jury determination of all three claims the district court's judgment is affirmed in part and reversed in part.

Several contentions are advanced by both Wheatley and Gladden, but we need consider only two: first, was the court correct in denying Wheatley's motion for a directed verdict on the issue of unseaworthiness and submitting that question to the jury, and second, was the court correct in directing a verdict for the defendant Gladden on the negligence and "maintenance and cure" claims based on the absence of an employer/employee relationship.

The *Ida May* was used each year for "dredging" or collecting oysters in Maryland's Chesapeake Bay region. Gladden worked the *Ida May* himself until 1970, when he began leasing the boat to others during the annual oyster dredging season. Gladden gave Kermit Travers permission to operate the *Ida May* during the 1977 season. There was an oral agreement between

Gladden and Travers and the latter hired a crew, including Wheatley. Shortly after that, Wheatley was injured during a dredging operation, when a metal pin protruding approximately one inch from a winding gear caught his trouser. His leg was pulled into the winding gear and he suffered a broken ankle and other injuries to his leg and back.

■ The trial court ruled that whether the protruding pin constituted an unsafe working condition amounting to unseaworthiness was a question for the jury. We agree and affirm that portion of the judgment against Wheatley based on the jury verdict on the issue of unseaworthiness.

The trial court also held that Wheatley could not recover on his Jones Act claim and his "maintenance and cure" claim against Gladden because each required an employer/employee relationship which was absent in this case as a matter of law.

■ It is true that an employer/employee relationship is a necessary antecedent to a Jones Act negligence claim, *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949), and to a "maintenance and cure" claim, *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932). The existence of such an employer/employee relationship must be determined under maritime law, *United States v. Webb, Inc.*, 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970), and the burden of proof is on the seaman to establish the employment relationship. *Osland v. Star Fish & Oyster Co.*, 118 F.2d 772 (5th Cir. 1941), *cert. denied*, 314 U.S. 615, 62 S.Ct. 86, 86 L.Ed. 495 (1941). Among the factors to be considered in determining whether a party is an employer are the degree of control exercised over the details of the operation, the amount of supervision, the amount of investment in the operation, the method of payment and the parties' understanding of the relationship. *United States v. Webb, Inc., supra; Kirkconnell v. United States*, 347 F.2d 260, 171 Ct.Cl. 43 (1965). The resolution of the issue is normally a factual one within the province of a jury. *The Norland*, 101 F.2d 967, 9 Alaska 471 (9th Cir. 1939); *Claussen v. Gulf Oil*

*Corp.*, 136 F.Supp. 110 (W.D.Pa.1955); 2 M. Norris, *The Law of Seamen* § 670 (3d ed. 1970).

■ A boat owner may retain sufficient control over his property to be charged with the duties of an employer even though another party actually is in charge of the vessel's operation. This is not the case, however, where there is nearly total relinquishment of control through a bareboat, or demise charter. Under a bareboat charter the charterer assumes all obligations of ownership, including those of the employer to the crew. *United States v. Webb, Inc., supra*. The test for establishing a bareboat charter is one of control—has the owner completely relinquished possession and command of the boat. *Guzman v. Pichiralo*, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); *Carolina Seafoods, Inc. v. United States*, 581 F.2d 1098 (4th Cir. 1978); *Stevens v. Seacoast Co.*, 414 F.2d 1032 (5th Cir. 1969). Since we are reviewing the action of a trial court directing a verdict against Wheatley, we must view the evidence most favorably to him and give him the benefit of all reasonable inferences from the evidence. *McClure v. Price*, 300 F.2d 538 (4th Cir. 1962). The record so viewed showed that Gladden unilaterally fixed the terms of the oral agreement and received 30 percent of the receipts of each "catch." Expenses, including gas and oil, were deducted from the remaining 70 percent. The remainder was then distributed equally among the crew, including Travers. Gladden, in addition, paid Travers 5 percent of the total receipts for operating the boat. This payment came from Gladden's 30 percent share. There was no specific agreement concerning hiring of the crew, payment for maintenance and repair of the boat, daily supervision of the crew or sale of the oysters. Travers hired the first crew and completely supervised the work. He chose the site for dredging, selected a vendee for the oysters, received the money for the sale, paid the crew and gave Gladden his share. Travers, while operating the boat, obtained maintenance and repairs for it, but the bills were paid by Gladden. However, Travers testified that Gladden re-

placed the original crew without consulting him. Gladden denied ever sending Travers a new crew. Gladden also testified that he "laid off" Travers because he failed to properly account for the proceeds of the oyster sales. Travers testified that Gladden simply approached him and said "You're fired." Gladden, on cross-examination, stated that he had a right to "lay off" Travers because he was the latter's employer.

A trial court is correct in directing a verdict when the evidence is such that, without weighing the credibility of the witnesses there can be but one conclusion as to the verdict that reasonable jurors could have reached. *Nationwide Mutual Insurance Co. v. McLaughlin*, 429 F.2d 1317 (4th Cir. 1970). In this case it cannot be said that a reasonable juror could not have found that Gladden retained possession or command of the *Ida May*. In fact, we would be required to uphold a jury's decision either that he did or did not. The evidence produced a classic jury issue on the question of whether Gladden or Travers was actually the employer.

Gladden argues that even if he is the employer, there could be no Jones Act negligence since the jury found the *Ida May* to be seaworthy. The simple answer to this contention is that we do not know what acts of employer negligence Wheatley may have been able to prove. An employer who places another in charge of the operation of his vessel may still be liable under the Jones Act for injuries resulting from the negligence of his officers, agents, or employees. Concededly, it may be rare circumstances which will constitute negligence but not unseaworthiness. Wheatley, however, under the allegations of his complaint, should have the opportunity to factually develop this theory of his case.

Affirmed in part, reversed in part, and remanded for further action consistent with this opinion.

*AFFIRMED IN PART; REVERSED IN PART; REMANDED.*

ALBERT V. BRYAN, Senior Circuit Judge, concurring and dissenting:

While I concur in so much of the majority's opinion which affirms the jury determination on the unseaworthiness issue, I find that the record amply supports the District Judge's direction of a verdict in favor of the defendant on the other two counts of the plaintiff's complaint. Accordingly, I would affirm the judgment in all respects.

It should be noted that the issue before the Court today concerns only whether there was sufficient evidence to warrant a directed verdict in favor of the defendant. It appears seriously doubtful that the plaintiff will be able to recover in any event, but since a new trial is now necessary, I defer consideration of the merits until such time, if any, as further appellate review is required.