848 F.2d 184
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lynn Fiske AMAKER, Plaintiff-Appellant,
v.
OTIS ELEVATOR COMPANY, Defendant-Appellee,
OTIS ELEVATOR COMPANY, Defendant-Appellee, TIHaughton
Elevator Company, Inc., Defendant.
 No. 87-1652.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 9, 1988.
 Decided: May 25, 1988.
 
 Morris Cooke, Jr. (Robert A. Patterson; Barnwell, Whaley, Patterson & Helms; J. Louis Lempesis, on brief), for appellant.
 Carroll Allen Gibson, Jr. (Joseph H. McGee; Buist, Moore, Smythe & McGee, on brief), for appellee.
 Before K.K. HALL and ERVIN, Circuit Judges, and W. EARL BRITT, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This personal injury action arose out of accidents on an elevator maintained by the appellee. The appellant brought the action for negligence and breach of contract and sought compensatory and punitive damages. A jury awarded the appellant $15,000 in damages on the action based on negligence but found in favor of the appellee on the breach of contract claim. The district court directed a verdict for the defendant on the issue of punitive damages, which is the sole issue raised on appeal. We affirm.
 
 
 2
 "Whether a motion for a directed verdict should have been granted is a question of law requiring de novo review on appeal." Gairola v. Com. of Va. Dept. of General Services, 753 F.2d 1281, 1285 (4th Cir.1985). The test is whether "without weighing the evidence or considering the credibility of the witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Gairola, 753 F.2d at 1285, quoting Wheatley v. Gadden, 660 F.2d 1024, 1027 (4th Cir.1981). Thus, we must determine whether there was sufficient evidence of punitive damages requiring submission of the issue to the jury.
 
 
 3
 On 22 October 1979 the appellant was injured when the elevator she was riding malfunctioned. On 11 March 1980, while appellant was riding another elevator in the same building, it suddenly "dropped" and stopped between floors, trapping her in the elevator for a short period of time.
 
 
 4
 The record indicates that the elevators in use at the Medical University of South Carolina were a continuing source of trouble. A prior history of incidents and trouble calls is not disputed. What is disputed are the practices of Otis Elevator Company in attempting to remedy the problems and maintain the elevators. Appellee's responsibilities with regard to the elevators was governed by contract. This contract specifically set out appellee's obligation with respect to maintenance, emergency service, inspections, and schedules.
 
 
 5
 According to the appellant, the appellee failed to remedy recurring problems and perform scheduled maintenance duties. Appellant further argues that appellee's failure to respond to the calls made in October, prior to the appellant's first accident, and failure to make regular maintenance and safety inspections shows a conscious disregard for its duty to exercise due care.
 
 
 6
 Under South Carolina law the standard for awarding punitive damages is as follows:
 
 
 7
 The test by which a tort is to be characterized as reckless, wilful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights. [Citations omitted.] It is this present consciousness of wrongdoing that justifies the assessment of punitive damages against the tort feasor.
 
 
 8
 Rogers v. Florence Printing Company, 233 S.C. 567, 106 S.E.2d 258, 263-64 (1958) (emphasis added).
 
 
 9
 Appellant argues that one indication of the appellee's recklessness is its entrusting of care of the elevators to Mr. Harold Crusenberry, who she alleges was undertrained and overworked. Appellant's presentation of evidence at trial regarding Mr. Crusenberry's lack of qualifications was not substantial. Rather, Mr. Crusenberry testified on direct examination that he received specific training in the maintenance of Haughton Elevators. In fact, on more than one occasion, he received visits from Mr. Terry Pope, Otis' expert on Haughton Elevators, for training at the University. (APP. 198-199) Mr. Crusenberry also testified that he had a full-time helper who was qualified to maintain the elevators and respond to call-backs and that the two of them were able to cover all of the maintenance and trouble calls without difficulty. (APP. 202, 218)
 
 
 10
 Appellant further argues that there is evidence of at least four prior accidents, that the problem was not corrected, and further evidence that appellee did not even respond to the calls. Those persons involved in the prior accidents testified at trial. Their testimony indicated a similar problem with the elevator and also indicated that these accidents were reported. There was also testimony regarding, and excerpts from, a log that was maintained by the physical plant at the building which recorded all trouble calls. The appellant also offered in evidence the contract between the appellee and the Medical University which required that emergency trouble calls be answered within sixty minutes and non-emergency trouble calls be answered within three hours. Appellant also offered into evidence a "Call Back, Repair, Rope Report" maintained by the appellee's agents. This report does present some evidence that the appellee may not have responded to all of the trouble calls. However, it is not clear that this is the sole source for that information, and appellant failed to offer any further evidence that the appellee failed to perform its duties under the contract and respond to the trouble calls. On the other hand, witnesses from the Bursar's Office at the University testified that an Otis mechanic was responding to calls reporting trouble with the elevators. (APP. 310) Furthermore, during the week before appellant's accident in October, those employees confirmed that Otis mechanics were working on the elevators, and in fact, took elevator 45 out of service for some portion of that week. (APP. 310, 314)
 
 
 11
 Failure to respond to trouble calls as required by contract, with knowledge of previous accidents and injuries, could show a conscious failure to observe due care warranting punitive damages. However, we agree with the trial judge that in this case the appellant failed to present enough evidence to warrant submission of the issue to the jury.
 
 
 12
 AFFIRMED.