21 F.3d 423
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Ronald D. PERRY; Brenda Perry, Plaintiffs-Appellees,
v.
OTIS ELEVATOR COMPANY, a corporation, Defendant-Appellant,
and
CENTRAL REALTY COMPANY, a corporation, Defendant.
Ronald D. PERRY; Brenda Perry, Plaintiffs-Appellants,
v.
CENTRAL REALTY COMPANY, a corporation; Otis Elevator
Company, a corporation, Defendants-Appellees.
 Nos. 93-1129, 93-1155.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 24, 1994
Decided April 18, 1994.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Huntington. Robert J. Staker, District Judge. (CA-91-944-3)
 Charles E. Hurt, Charleston, WV, for appellant.
 Garis L. Pruitt, Catlettsburg, KY; Thomas M. Plymale, Huntington, WV; Steven K. Nord, Wood, Grimm & Delp, Huntington, WV, for appellees.
 S.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald D. Perry and his wife, Brenda Perry, brought this negligence action after Ronald Perry sustained permanent personal injuries when the elevator in which he was riding fell five stories and crashed into a basement pit after the emergency braking system failed. The elevator was located in the Frederick Building, which was owned by Defendant Central Realty Company; Defendant Otis Elevator Company had the lubrication and survey contract (the Contract) on the elevator. The jury found both Defendants liable, apportioning ninety-five percent negligence for the Perrys' injuries to Otis and five percent to Central Realty.
 
 
 2
 Otis appeals the district court's denial of its motions for judgment as a matter of law and for a mistrial. In addition, Otis claims error by the district court in failing to limit the liability of Otis to its duties under the Contract, in permitting a witness to testify regarding alleged industry standards, and in its rulings regarding certain jury instructions. (No. 93-1129). The Perrys cross-appeal, claiming the district court erred in denying their motion to amend their complaint to add a punitive damages claim. (No. 93-1155). For the reasons set forth below, we affirm.
 
 I.
 
 3
 The sole issue on appeal in No. 93-1155 is whether the Perrys were entitled to amend their complaint to conform to the evidence on the issue of punitive damages. The Perrys contend that because the pretrial order signed by all counsel of record and approved by the district court provided for such an amendment, the district court erred in denying their motion to amend their complaint to include a punitive damage claim.
 
 
 4
 The standard on review is whether the district court abused its discretion in denying leave to amend. Quillen v. International Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir.1986); Walker v. Action Industries, Inc., 802 F.2d 703, 711 n. 16 (4th Cir.1986), cert. denied, 479 U.S. 1065 (1987). The propriety of the amendment for damages depends on whether the Defendants received actual prior notice of the demand. McLeod v. Stevens, 617 F.2d 1038, 1040 (4th Cir.1980); 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1491 (1990). Moreover, a motion to amend may be denied when the motion has been unduly delayed and when allowing the amendment would unduly prejudice the non-movant. Deasy v. Hill, 833 F.2d 38, 40 (4th Cir.1987), cert. denied, 485 U.S. 977 (1988) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.1980)). In this case, lack of actual prior notice, undue delay, and prejudice are all present.
 
 
 5
 The Perrys did not move to amend their complaint to include the punitive damage count until October 20, 1992, which was after they rested their case. The time frame order entered by the district judge on October 28, 1991, required that all amendments to the pleadings be made by January 28, 1992. The Perrys assert that the Defendants were on notice as to the punitive damage claim by virtue of two items in the pre-trial order entered on October 6, 1992.[1] However, the Perrys never sought a ruling on the claim by the district court prior to trial, as required by the pre-trial order. Furthermore, no discovery had been taken by any party on the issue of punitive damages.
 
 
 6
 The Perrys contend that the Defendants implicitly consented to a punitive damages claim because they failed to object to the cross-examination testimony of John Weldin, Central Realty's expert witness, that the failure to run safety tests showed an unconscionable disregard for human safety. They offer no legal support for their assertion.
 
 
 7
 In light of the requirement of actual prior notice, and the time frame order requiring a ruling on a punitive damage amendment prior to the commencement of trial, we find that Defendants' failure to object to Weldin's testimony is insufficient to establish consent to a claim of punitive damages. The Perrys had ample opportunity to provide notice of a punitive damages claim to Defendants and to obtain a ruling on the issue by the trial court, as required in the pre-trial order. Instead, they disregarded the requirements of the pre-trial order, and attempted to "back-door" their damage claim by relying on Fed.R.Civ.P. 15(b), and Defendants' failure to object to Weldin's testimony.
 
 
 8
 Given the lateness of the Perrys' motion to amend their complaint to claim punitive damages, as well as the other circumstances addressed above, we find that the district judge's denial of that motion was not an abuse of discretion.
 
 II.
 
 9
 Because three of Otis's contentions (issues one, two, and four in Otis's Brief) on appeal are related, we will address them together. Otis asserts that the district court erred in failing to limit the liability of Otis to its duties under the Contract, improperly denied Otis's motion for a directed verdict, and incorrectly instructed the jury to apportion damages between Otis and Central Realty.
 
 
 10
 This Court reviews de novo the grant or denial of a motion for a directed verdict. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985). In considering a motion for a directed verdict, the district court must construe the evidence in the light most favorable to the party against whom the motion is made. Garraghty v. Jordan, 830 F.2d 1295, 1302 (4th Cir.1987). The court should not allow a jury to consider a case if "without weighing the evidence or considering the credibility of the witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Gariola, 753 F.2d at 1285 (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir.1981)). The trial court must direct the verdict upon request unless there is " 'substantial evidence to support' [sic] the verdict asked of the jury." Id. (quoting Business Dev. Corp. v. United States, 428 F.2d 451, 453 (4th Cir.), cert. denied, 400 U.S. 957 (1970)).
 
 
 11
 Otis specifically alleges that the district court erred in failing to direct a verdict on its behalf at the close of the Perrys' evidence on the ground that the Contract did not require Otis to make any repairs or to keep the elevator in safe operating condition but only to lubricate and to observe and make a report. Otis further contends that the language of the Contract protected Otis from liability because it expressly stated that (1) Otis had no control or possession over the elevator; (2) Otis would not be liable for damage due to any cause beyond Otis's reasonable control; and (3) under no circumstances was Otis to be liable for consequential damages.
 
 
 12
 Otis further claims that the district judge erroneously relied on Bronz v. St. Jude's Hosp. Clinic, 402 S.E.2d 263 (W. Va.1991), for the proposition that whether Otis was responsible for the Perrys' injuries was a jury question, and that the jury could properly apportion fault as between Otis and Central Realty. It is Otis's position that Bronz is inapplicable to this case because the Contract between Otis and Central Realty limits Otis's liability to negligent performance of (or failure to perform) its duties under the Contract. Otis claims that because it fulfilled its obligations under the Contract, the case against it for negligence proximately causing the Perrys' injuries never should have been submitted to the jury.
 
 
 13
 At trial, while Otis objected to the applicability of Bronz to the case at bar, it failed to object to the jury instructions relating to the apportionment of damages, despite being given the opportunity to do so by the district judge. Failure to object to a jury instruction results in waiver of the issue on appeal. Fed.R.Civ.P. 51; Waters v. Massey-Ferguson, Inc., 775 F.2d 587, 590-91 n. 2 (4th Cir.1985).
 
 
 14
 The jury was instructed that Otis was liable to the Perrys to the extent, if at all, it failed to act as a reasonable elevator contractor and breached its contract with Central Realty. In its Brief Otis agreed with this statement of the law. Further, there is no dispute that pursuant to the terms of the Contract, Otis had a duty to report to Central Realty anything that should be repaired and to make recommendations as to what work should be done. In evaluating the evidence, the jury apparently determined that an ordinary prudent elevator contractor would have gone to greater lengths to report to Central Realty that a safety test was needed on the elevator in order to insure that it was safe.
 
 
 15
 Otis employees testified that they advised Central Realty, both orally and in writing, of the need for safety tests as part of the annual surveys and report of conditions. On the other hand, John Weldin, the Central Realty expert witness, testified that the form Otis used to advise Central Realty of potential problems was incomplete because neither the form itself nor any Otis employee explained that a particular mark on the form indicated a need for further tests or repairs. Further, three Central Realty employees testified that the forms used by Otis were never explained to them, and that they did not understand them. The building superintendent denied ever discussing safety tests with any Otis employee. An officer of Central Realty testified that in fifty years of working for the company he had never heard of safety tests being performed by Central Realty on the elevators.
 
 
 16
 In addition, there was an issue as to whether Otis improperly installed roller guides on the bottom of the elevator and whether this contributed to the gravity of the elevator's crash. Central Realty's expert testified that the roller guides were improperly installed by Otis and that the impact of the elevator car was aggravated by the improper installation. While Otis blamed the damage to the roller guides on debris in the bottom of the elevator pit, for which it was not responsible, Central Realty denied any build up of debris and further denied that debris was responsible for the damage to the roller guides. Again, there was a conflict in the testimony between witnesses for the two co-Defendants, which the jury resolved primarily in favor of Central Realty.
 
 
 17
 There was ample evidence elicited from the witnesses to establish a question of fact as to whether Otis breached its Contract with Central Realty which required Otis to report to Central Realty any repairs that needed to be performed on the elevator, and as to whether Otis acted as a reasonably prudent contractor by adequately advising Central Realty of the need for the load tests. Consequently, reasonable jurors could have reached different conclusions as to the liability of Otis. Because there existed a conflict in substantial evidence, a jury question was created. Worsham v. A.H. Robins Co., 734 F.2d 676, 681 (11th Cir.1984). Accordingly, we find that the district judge did not err in failing to direct a verdict in favor of Otis, nor did he err in instructing the jury on apportionment of damages.[2]
 
 
 18
 Otis next contends that the district court erred in denying its motion for mistrial after the Perrys were permitted, over objection, to develop testimony regarding the size, wealth, and influence of Otis. Otis asserts that the district court allowed the testimony into evidence on the basis of the Perrys' counsel's erroneous representation to the court that the Perrys had pled punitive damages and that the questions were directed toward establishing those damages. According to Otis, the district court's instruction that the jury should treat a private individual and a corporation equally and justly under the law was insufficient to cure the error.
 
 
 19
 We will reverse the denial of a motion for a mistrial only upon a showing of clear abuse of discretion. United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 959 (1989). Although a mistrial should be declared if the inadmissible evidence is not likely to be cured by a remedial instruction, United States v. Tedder, 801 F.2d 1437, 1444 (4th Cir.1986), cert. denied, 480 U.S. 938 (1987), a defendant must show prejudice for the court's ruling to constitute an abuse of discretion. West, 877 F.2d at 288.
 
 
 20
 It is interesting that on direct examination by counsel for Otis, in an effort to substantiate the qualifications of its own witness, a plethora of evidence was introduced about the size, and implicitly, about the wealth of Otis. Counsel for Otis then objected to the questioning of this witness on cross-examination as to that issue. While the district judge allowed counsel for the Perrys to further question the witness in the belief that a punitive damages claim had been pled, either the witness did not answer the questions, or the questions were the same as those asked by counsel for Otis on direct examination.
 
 
 21
 Otis has not asserted, nor has it established, any prejudice resulting from the testimony to which it objects. Moreover, any error that may have occurred was harmless in light of the judge's curative instruction. Consequently, we find that the district judge's denial of Otis's motion for a mistrial was not clearly erroneous.
 
 
 22
 Otis's next claim of error relates to whether the district court erred in permitting a witness to testify regarding alleged industry standards. The admission of evidence is reviewed for plain error. Fed.R.Evid. 103(d); see United States v. Young, 470 U.S. 1, 6 (1985).
 
 
 23
 Essentially, Otis claims that the Contract between it and Central Realty, and not industry standards, governed its duties. However, while Otis claims on the one hand that its sole duty arises under the terms of the Contract, on the other hand, Otis acknowledges that it had a duty to use the care an ordinarily prudent "lubrication and survey" elevator contractor would use in the same or similar circumstances.
 
 
 24
 Otis cites no legal authority in support of this claim of error, nor has it asserted how it may have been prejudiced by the testimony. Indeed, it is unclear from Otis's Brief on this issue exactly what testimony it is to which it objects, as it fails to cite to anything in the record.[3] We have reviewed the record and find no evidence of prejudice or plain error.[4] We accordingly affirm the district court's ruling allowing Weldin's testimony.
 
 III.
 
 25
 Otis's final claim on appeal relates to jury instructions. Challenges to jury instructions are reviewed under the abuse of discretion standard. See Nelson v. Green Ford, Inc., 788 F.2d 205, 208 (4th Cir.1986); United States v. Benny, 786 F.2d 1410, 1416 (9th Cir.) (applying abuse of discretion standard for review of challenges to district court's language or formation of jury instructions), cert. denied, 479 U.S. 1017 (1986).
 
 
 26
 Otis alleges that the district court erred in refusing to give jury instruction number eight offered by Otis.[5] The district judge refused the instruction on the basis that the court may not substitute its words for those in the Contract, and that because the Contract said nothing about taking machinery apart, the proposed instruction was improper. In a discussion between the parties at trial, the district judge proposed a compromise, which was to use the word "survey" in the instructions, and to then allow the parties to argue in closing what "survey" meant. Counsel for Otis agreed to the compromise.
 
 
 27
 We find that the district court's refusal to include language originally proposed by Otis was not an abuse of discretion, particularly in light of the agreement by Otis's counsel to the judge's compromise instruction and agreement to allow counsel to argue the meaning of the word "survey" to the jury.
 
 
 28
 Otis's next alleged error relates to the instruction that the jury could consider "that Otis breached any other contract for the repair of the elevator Otis had with Central Realty." Otis asserts that because there was only one contract between the parties, the instruction was misleading and that the jury may have found Otis liable under a nonexistent contract that was never introduced into evidence. Essentially, the basis for Otis's assertion is that there was insufficient evidence of another contract between Otis and Central Realty to support a jury instruction referring to any contract other than the lubrication and survey contract at issue.
 
 
 29
 A review of the record reveals that evidence was presented as to another contract for the installation of roller guides. Witnesses testified that (1) approximately six months prior to the accident Otis installed roller guides onto the elevator in question; (2) there was a written proposal for Otis to replace the roller guides; and (3) Otis sent Central Realty an invoice for over $11,000 for the installation of the roller guides pursuant to the proposal. The invoice was entered into evidence by Central Realty as a trial exhibit. Because the evidence established that there was a separate contract between Central Realty and Otis for the installation of roller guides, we find that there was ample foundation to support that instruction. See United States v. Horton, 921 F.2d 540, 543 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3850 (U.S.1991).
 
 
 30
 Otis's final claim is that the district court erred in instructing the jury that it could consider "elevator industry standards" in determining Otis's negligence. Essentially, this claim is an extension of Otis's earlier claim that the only issue which the jury should have considered was whether Otis complied with the Contract. Otis objected to any reference to any industry standard.
 
 
 31
 Otis put on ample evidence that there was no industry standard which applied to Otis's duties, other than the ANSI one year/five year load testing recommendation, which Otis admitted it followed. Central Realty put on evidence through its expert witness that Otis was required by industry standards not only to advise Central Realty of the need to perform the one year/five year testing, but also of the consequences of failing to perform the tests. For the reasons stated above, the district court's determination that elevator industry standards were an appropriate consideration for the jury was not an abuse of discretion.
 
 
 32
 Accordingly, we affirm the district court's rulings on all issues on appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The order identified the availability of punitive damages to the Perrys as a "contested ruling of law" requiring court ruling prior to the commencement of trial; further, the order listed punitive damages under the heading "essential elements of proof and the measure of damages or relief applicable thereto."
 
 
 [2]
 Otis's claim that the district court erred in ruling that Otis had control of the premises or operations where the accident occurred is puzzling in light of the fact that this "ruling" appears nowhere in the jury instructions. Otis cites no portion of the record in which this "ruling" occurred. Consequently, even if the district judge made such a ruling, Otis was not prejudiced thereby because it was not submitted to the jury
 
 
 [3]
 While Otis claims that Weldin testified to standards that were not relevant to this case, testimony is not prejudicial merely because it is not relevant. Nothing precluded testimony--or final argument--by Otis that portions of Weldin's testimony were not relevant. Indeed, Otis's expert witness, Wayne Smith, testified that Otis violated no industry standards
 
 
 [4]
 There can be no claim that Otis was prejudiced by references to the American National Standards Institute (ANSI) code in light of the fact that Otis's own employee testified that Otis followed the ANSI code in its no-load once a year/full load every five years safety test requirement
 
 
 [5]
 This instruction read: "[i]n performing its surveys or inspections under the contract, [Otis] was not authorized or required to take the machinery apart in an effort to find all possible defects. Rather, it was only required to make such inspection as would reveal visible or obvious defects and to make a report to the building owner, Central Realty." Brief for Appellant at 23-24