**ALLIED COLLOIDS INC. and Allied Colloids Limited, Plaintiffs–Appellants,**

v.

**AMERICAN CYANAMID COMPANY, Defendant–Appellee.**

No. 93–1407.

United States Court of Appeals, Federal Circuit.

Sept. 1, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 25, 1995.

Gary M. Hoffman, Dickstein, Shapiro & Morin, Washington, DC, argued for plaintiffs-appellants. With him on the brief were Woody N. Peterson, James W. Brady, Jr. and James J. Trussell.

Berj A. Terzian, Pennie & Edmonds, New York City, argued for defendant-appellee. With him on the brief were Isaac Jarkovsky, Robert M. Kunstadt, Victor N. Balancia, Steven I. Wallach, and Margaret M. Coyne; Lyle K. Kimms and Peter D. Vogl, of counsel.

Before ARCHER, Chief Judge,
NEWMAN and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this patent infringement action tried to a jury, the district court directed the grant of judgment as a matter of law in favor of the defendant American Cyanamid Company ("Cyanamid"), upon completion of the case in chief presented by the plaintiffs Allied Colloids Inc. and Allied Colloids Ltd. (collectively "Colloids").[1] The court held that a reasonable jury could reach only the verdict that the patents in suit, United States Patents Nos. 4,720,346 and 4,943,378, were invalid based on the public use bar of 35 U.S.C. § 102(b). The principal issue on appeal is the correctness of that judgment. An additional issue is the correctness of the district court's ruling that Colloids' patents are unenforceable for inequitable conduct because Colloids did not tell the Patent and Trademark Office ("PTO") about this public use.

I

THE PUBLIC USE BAR

■ In granting judgment as a matter of law after presentation of the plaintiff's case, the plaintiff's facts must be accepted as established and all reasonable inferences from those facts must be drawn in the plaintiff's favor. Rule 50(a)(1), Fed.R.Civ.P., provides that if

a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a

---

1. *Allied Colloids Inc. v. American Cyanamid Co.,* No. 92–1658A (E.D.Va. June 7, 1993) (Order). Allied Colloids Ltd. is the British parent company and Allied Colloids Inc. is its American subsidiary.

matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

*See generally Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (comparing criteria for directed verdict and summary judgment).

■ The grant of a Rule 50(a) motion is given plenary review on appeal. *Parker v. Prudential Ins. Co.,* 900 F.2d 772, 776 (4th Cir.1990); *see Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 756 F.2d 1556, 1561, 225 USPQ 253, 257 (Fed.Cir.1985). The appellate court, like the trial court, determines whether, "viewing the evidence in the light most favorable to the non-moving party," and giving the plaintiff "the benefit of all reasonable inferences," there is sufficient evidence of record to support a jury verdict in favor of the plaintiff. *Herold v. Hajoca Corp.,* 864 F.2d 317, 319 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). The court must construe the evidence in the light most favorable to the party against whom the directed verdict motion is made. *Parker,* 900 F.2d at 776. In reviewing the propriety of the directed verdict the appellate court does not weigh the evidence, consider the credibility of witnesses, or decide disputed facts. *Gairola v. Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir.1985). The test is whether " 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " *Gairola,* 753 F.2d at 1285 (quoting *Wheatley v. Gladden,* 660 F.2d 1024, 1027 (4th Cir. 1981)).

Thus the verdict may be directed after the plaintiff's case is presented, when it is clear that completion of the trial is unnecessary in that the only sustainable verdict could be in favor of the defendant. There is, however, practical weight in favor of completing the trial, lest the directed verdict not be sustained on appeal; as noted in *Dace v. ACF Indus., Inc.:*

> This case illustrates again that it is usually better practice for a district court, faced with a motion for directed verdict, to allow the case to go to the jury, and address the

issue by way of judgment n.o.v. if necessary. The jury may find for the moving party, in which case the issue disappears. If the verdict is against the moving party, and if judgment n.o.v. is granted, and if this Court decides on appeal that it should have been denied, the verdict can simply be reinstated, and no new trial is necessary.

722 F.2d 374, 379–80 n. 9 (8th Cir.1983), *quoted in U.S. Philips Corp. v. Windmere Corp.,* 861 F.2d 695, 705, 8 USPQ2d 1885, 1892 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989).

### A

The occurrence of the events on which the district court's judgment rested is not in dispute. However, the factual inferences and legal conclusions that the court drew from these events are challenged. In brief outline:

Colloids is a purveyor of sewage treatment materials. The patents in suit are directed to certain polymeric flocculents and the method of treating sewage with these materials. Colloids told officials of the City of Detroit that these materials, which were developed in England, might be useful in treating Detroit municipal waste. Colloids had previously treated Detroit waste, but had lost the business. At Colloids' invitation samples of Detroit sludge were sent to England for testing. After some favorable test results in England, about twenty samples of Colloids' sewage treatment materials were brought to Detroit for testing on fresh Detroit sewage. These samples were about two to four ounces in size. They were tested on April 16–17, 1985, in a laboratory located at a Detroit sewage treatment plant. The tests showed promising results for some of Colloids' products. Additional laboratory tests were conducted in Detroit in July 1985, and plant-scale trials were conducted in Detroit in December 1985. Colloids' patent application was filed in the United States on April 23, 1986; thus only the first series of tests is relevant to the asserted public use bar, *i.e.* the April 16–17, 1985 tests.

The district court held, after the plaintiff's case, that the tests on April 16–17 were an

invalidating public use as a matter of law, on the principal grounds that the tests had a "commercial objective" and were not performed under a confidentiality agreement with the City of Detroit. Colloids argued that the tests were of an experimental nature. The district court did not disagree, but held that the experimental nature did not avoid the public use bar because the activity was "commercially motivated."

## B

35 U.S.C. § 102 provides that a person is entitled to a patent unless

> (b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

A "public use" for the purpose of barring access to the patent system is a use more than a year before the patent filing date, whereby a completed invention is used in public, without restriction and in circumstances other than "substantially for the purposes of experiment." *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 256, 8 S.Ct. 122, 125, 31 L.Ed. 141 (1887). The public use bar serves the policies of the patent system, for it encourages prompt filing of patent applications after inventions have been completed and publicly used, and sets an outer limit to the term of exclusivity.

The law recognizes that the inventor may test the invention, in public if that is reasonably appropriate to the invention, without incurring a public use bar. In *City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 24 L.Ed. 1000 (1878) (distinguishing "public knowledge" from "public use or sale"), the Court wrote:

> When the subject of invention is a machine, it may be tested and tried in a building, either with or without closed doors. In either case, such use is not a public use, within the meaning of the statute, so long as the inventor is engaged, in good faith, in testing its operation. He may see cause to alter it and improve it, or not. His experiments will reveal the fact whether any and what alterations may be necessary.

97 U.S. at 134–35. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 551, 16 USPQ2d 1587, 1592 (Fed.Cir.1990) (determining whether invention is "operable for its intended purpose in its intended environment" is not a statutory public use).

Thus the public use bar of § 102(b) requires that (1) the invention was used in public and (2) the use was not primarily experimental in purpose. The determination of these aspects requires considering and weighing such factors as the nature of the activity that occurred in public; the public access to and knowledge of the public use; whether there was any confidentiality obligation imposed on persons who observed the use; whether progress records or other indicia of experimental activity were kept; whether persons other than the inventor or acting for the inventor conducted the experiments; how many tests were conducted; the scale of the tests compared with commercial conditions; the length of the test period in comparison with tests of similar products; and whether payment was made for the product of the tests. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1564, 4 USPQ2d 1210, 1214 (Fed.Cir.1987); *In re Brigance*, 792 F.2d 1103, 1107–08, 229 USPQ 988, 991 (Fed.Cir.1986); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir.1984); *TP Labs., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971–72, 220 USPQ 577, 582 (Fed. Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984). There may be additional factors in a particular case, relevant to the public nature of the use or any asserted experimental aspect. All of the circumstances must be considered. *Baker Oil Tools*, 828 F.2d at 1564, 4 USPQ2d at 1214.

Patent invalidity based on public use is required to be proved by clear and convincing evidence. *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987). In granting judgment as a matter of law on completion of the plaintiff's case the court should direct a verdict only if, under the governing law, there can be but one reasonable conclusion as to the verdict. *See*

*Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2514 ("[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.")

■ Invalidity under 35 U.S.C. § 102(b) is an affirmative defense and therefore the burden of proof in this case was on Cyanamid. *See TP Labs.,* 724 F.2d at 971, 220 USPQ at 582 (the burden of establishing public use is on the one who attacks validity on that ground). However, since Cyanamid moved for the directed verdict upon completion of Colloids' case in chief, Colloids' evidence is to be believed and justifiable inferences drawn in Colloids' favor. The Court explained in *Anderson v. Liberty Lobby:*

> Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

477 U.S. at 255, 106 S.Ct. at 2513 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

■ The district court held that the April 16–17 tests in the Detroit sewage treatment laboratory were an invalidating public use even if the tests were for purposes of experimentation, for the reason that they were "commercially motivated." This was an error of law. *See Manville Sales,* 917 F.2d at 551, 16 USPQ2d at 1592 (testing to determine whether the invention performs as intended negates § 102(b) bar). As illustrated in precedent, public acts may range from experimentation where there are many unknowns, to simply using an already proven product in an unrestricted public location. Commercial purpose underlies virtually every contact between inventor and potential customer. When testing an invention entails customer contact, that does not convert an otherwise experimental purpose into a public use.

## C

■ Colloids presented testimony that the April 16–17 tests were part of its project to ascertain which if any of the various formulations would successfully treat Detroit sewage. Witnesses testified that the earlier tests in England, using sludge that had been shipped from Detroit, gave useful preliminary results, and led to continuing the testing using fresh Detroit sewage. There was testimony that the biological nature of sewage varies; that the results of laboratory testing did not guarantee the same result with testing in situ; and that site testing of Detroit's sewage was required.

It was not contradicted, during the plaintiff's case, that no Detroit personnel watched the tests, or knew the composition of the products that were being tested, or knew the test results. The tests were done in an area away from the actual sewage treatment operation. Colloids' witnesses testified that a City technician occasionally entered the room for other purposes, but did not observe and had no connection with these tests. The tests were conducted by Colloids' personnel, who kept a research log of the experiments.

The tests were not observed by anyone other than Colloids' employees. Mr. Whitwell, Colloids' Technical Services Manager who was present at the tests, testified that no one from the City of Detroit was involved in the tests or knew what products were being tested. Mr. Field, an inventor who was not himself present at the tests, testified that representatives of the City of Detroit "were there" at the municipal plant, but were not "observing the experiments." No witness testified that anyone other than Colloids' employees conducted or observed the experiments. It was undisputed that Colloids maintained strict control over the test samples, and that those samples were small in the context of municipal waste treatment.

In *Grain Processing Corp. v. American Maize–Products Co.,* 840 F.2d 902, 906, 5 USPQ2d 1788, 1792 (Fed.Cir.1988), the court held that there was no public use when "the testing period was short, very small quantities of the samples were shipped, and they

were free of charge." Colloids received no payment from the City of Detroit for these tests, and tested 20–30 different small samples, not all of which were related to the patent in suit.

■ The district court referred to the absence of a written confidentiality agreement between Colloids and the City of Detroit. Although a written promise of confidentiality is a factor to be considered in appropriate circumstances, such as when persons other than the patentee conduct the experiments, *see Hycor*, 740 F.2d at 1535, 222 USPQ at 558; *TP Labs.*, 724 F.2d at 971–72, 220 USPQ at 583, the absence of such a promise does not make a use "public" as a matter of law, or outweigh the undisputed fact that no information of a confidential nature was communicated to others, *see Moleculon Research*, 793 F.2d at 1265–66, 229 USPQ at 808; *TP Labs.*, 724 F.2d at 972, 220 USPQ at 583.

That Colloids hoped to obtain Detroit's business is not dispositive of the § 102(b) analysis. Undoubtedly the Detroit tests were conducted in order to determine whether Colloids had or could make products that would satisfactorily treat Detroit sewage. Such testing at the potential customer's site does not raise a public use bar as a matter of law. All of the circumstances must be considered, to ascertain whether on the entirety of the evidence it has been proved that the patented invention was publicly used.

The district court apparently concluded that Colloids itself viewed its April 16–17 tests as a bar under § 102(b). The court referred to a letter from Colloids' British patent attorney, written in March 1985, stating that the patent application should be filed before a "commercial sampling" in Detroit "the end of April." Colloids argues that this letter does not establish the nature of the April 16–17 tests. We agree that this letter was inadequate ground for the grant of judgment as a matter of law. Cautionary advice from a foreign patent attorney, advice that was not implemented, is not an admission of United States law or fact.

■ A public use under § 102(b) does not start the one-year period until the invention

has left the experimental stage. *See Manville Sales*, 917 F.2d at 551, 16 USPQ2d at 1592 (determining when tests were completed and invention was found to work as intended, in order to determine when grace period began and ended). The criteria that have been developed as a guide to this determination were not correctly considered. For example, the district court stated that it was not relevant that Colloids received no payment for the Detroit tests. We have explained that this is a factor to be considered, for the absence of payment supports the inference that the tests were for the benefit of the patentee, and thus contravenes the inference of public use for or by the potential customer.

■ The district court also stated that it was not relevant that Colloids prepared detailed records of the tests. Precedent teaches that this action is highly relevant, for the keeping of detailed test records is a routine indicium of the experimental mode. As in *TP Labs.*, such facts "indicate the inventor was testing the device, not the market." 724 F.2d at 973, 220 USPQ at 583. The district court indeed termed the April 16–17 tests an "experiment," but held that whether "there was some future or further improvements contemplated or necessary" was "not relevant to the public use bar." Whether future improvements were contemplated or necessary is indeed relevant, for experimental use is determined on all the evidence. *Baker Oil Tools*, 828 F.2d at 1563, 4 USPQ2d at 1213.

> The law recognizes an inventor's need to test the invention, to ascertain whether the work is complete or further changes should be made, and to show that the invention will work for its intended purpose.... [S]uch testing and development may encompass or even require disclosure to the public, without barring the inventor's access to the patent system.

*Id.* at 1563, 4 USPQ2d at 1213. *See also, e.g., Grain Processing*, 840 F.2d at 906, 5 USPQ2d at 1792 (test had to be run in customer's plant "because ingredients [in patented product] may interact adversely with other food ingredients in the manufacturers' products"). That the testing leads to

and is followed by commercial success does not convert the test activity into an invalidating public use. The dispositive consideration is whether the inventor was in fact testing the invention. As the Court wrote in *City of Elizabeth,* it is not necessary

> in such a case, that the machine should be put up and used only in the inventor's own shop or premises. He may have it put up and used in the premises of another, and the use may inure to the benefit of the owner of the establishment. Still, if used under the surveillance of the inventor, and for the purpose of enabling him to test the machine, and ascertain whether it will answer the purpose intended, and make such alterations and improvements as experience demonstrates to be necessary, it will still be a mere experimental use, and not a public use, within the meaning of the statute.

97 U.S. at 135. This law endures, and has many times been reinforced.

### D

On the evidence adduced during Colloids' case in chief, construed as required by Rule 50(a)(1), a reasonable jury could have found, applying the correct law, that there was not a public use bar under § 102(b). *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1573, 1 USPQ2d 1081, 1086 (Fed. Cir.1986) (reversing grant of judgment n.o.v. of an invalidating public use, holding that the jury could have construed the testimony as establishing there was no offer of sale or public use). It was thus incorrect to grant judgment of invalidity under § 102(b) as a matter of law. That judgment is vacated.

### II

### INEQUITABLE CONDUCT

■ The district court held the patents in suit permanently unenforceable for inequitable conduct. The court ruled that Colloids had the obligation to tell the PTO of its testing activities in Detroit on April 16–17, 1985. This ruling was based on the letter written by Colloids' British patent attorney in March 1985, advising that a patent application should be filed before "commercial sampling" in Detroit "the end of April." Cyanamid's motion for judgment as a matter of law was granted on this issue, at the close of the plaintiff's case in chief.

### A

The issue of inequitable conduct was not the subject of testimony in Colloids' case in chief. It appears to have been raised on quite short notice, in connection with Cyanamid's Rule 50(a)(1) motion. Cyanamid does not appear to dispute this point, confirming in its brief that Colloids had been served with "Cyanamid's motion papers, which thoroughly briefed the issue of inequitable conduct, on the previous evening."

The district court stated from the bench that "I didn't rest my decision on the duty to bring [the April 1985 tests] to the attention of the Patent Office." However, in the court's subsequent written Order this was the only reason given for the ruling of inequitable conduct. The court's Order referred to the British patent attorney's letter of March 29, 1985, about which he had testified in connection with the issue of experimental use and his understanding of the forthcoming "commercial sampling." The district court apparently concluded (the Order does not explain) that if Colloids' British patent attorney believed that there was a public use bar under United States law, he should have told the PTO.

The British patent attorney was not asked about his statement during cross-examination. For example, he was not asked why he did not file a patent application as the letter proposed. Colloids correctly points out that it was not required to foresee and respond to an issue that had not been raised. Rule 50(a) authorizes a directed verdict against a party only if the party has been fully heard on the issue. The notes to Rule 50(a)(1) states:

> In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact.

Fed.R.Civ.P. Rule 50 advisory committee's note (1991 Amendment). It is apparent that this criterion was not met.

## B

■ To establish unenforceability based on inequitable conduct the challenger must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of misleading or deceiving the patent examiner. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed. Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). *See Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1533, 20 USPQ2d 1300, 1304 (Fed.Cir. 1991) (inequitable conduct is "culpable conduct," and "does not flow simply from failure to meet the requirements of patentability").

It was to mitigate the "plague" whereby every patentee's imperfections were promoted to "inequitable conduct" that this court reaffirmed that both materiality and culpable intent must be established. As stated in *Kingsdown*, "all of the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." 863 F.2d at 876, 9 USPQ2d at 1392. Colloids had no opportunity to present evidence concerning either materiality or intent. The patentee can not be deprived of the right to rebut an inequitable conduct charge by showing lack of materiality, or good faith and the absence of intent to mislead or deceive the patent examiner. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987).

In view of our holding that a public use bar is not supportable on the evidence that was adduced, the failure to tell the examiner about this purported bar can not be deemed material and culpable in terms of the requirements of Rule 50(a)(1). It is not inequitable conduct to omit telling the patent examiner information that the applicant in good faith believes is not material to patentability. Whatever might be established upon trial of the issue is not before us; but the predicate facts of materiality and intent can not be inferred in the circumstances that here existed. The judgment of invalidity or unenforce-

ability based on inequitable conduct must be vacated.

## III

### THE MOTION TO STRIKE

■ Cyanamid moves to strike portions of Colloids' reply brief, stating that Colloids discusses new issues, not raised in its main brief. The portions to which Cyanamid objects refer to an Order of the district court dated July 23, 1993, denying Cyanamid's motion for attorney fees. This Order was received by Colloids after Colloids filed its opening brief in this court on July 23, 1993, and was not mentioned by Colloids in that brief. Cyanamid in its responsive brief filed September 3, 1993, referred to material that Colloids had filed in the district court in response to the attorney fee motion, some of which was contained in the joint appendix. Cyanamid did not mention on September 3 that the district court had denied the motion on July 23. Colloids in its reply brief discusses the denial. Cyanamid's motion states that Colloids improperly raised a new issue.

We discern no significant new issue raised in Colloids' reply brief. The district court's Order of July 23 was properly brought to our attention, for motions and orders filed in the district court after the date of the order appealed from "may affect ... consideration of the various issues presented." *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir.) (taking notice of, among other things, two post-judgment orders), *cert. denied*, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971). *See Stradley v. Cortez*, 518 F.2d 488, 494 n. 8 (3d Cir.1975) (taking judicial notice of matters set forth in motion papers filed four years after judgment).

The district court's Order is relevant to this case, and was appropriately brought to our attention. Cyanamid's motion to strike serves as a responsive argument and, although irregular, is received for that purpose. The motion to strike and for attorney fees is denied.

### CONCLUSION

The judgment under Rule 50(a)(1) of invalidity based on public use, and of unenforce-

ability based on inequitable conduct, is vacated. The case is remanded for further proceedings, consistent with this opinion.

Costs to Colloids.

*VACATED AND REMANDED.*