**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Russell KINNEY, Defendant–Appellant.**

**No. 90–5507.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1991.

Decided Jan. 10, 1992.

As Amended Feb. 12, 1992.

William C. Brennan, Jr., Knight, Manzi, Brennan, Ostrom & Ham, P.A., Upper Marlboro, Md., argued, for defendant-appellant.

James G. Warwick, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., Baltimore, Md., on the brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Russell Kinney, convicted in the District of Maryland on seven counts of drug and firearm offenses, appeals his convictions, contending that the trial court improperly rejected his motion to suppress evidence. Finding no error in the trial court's dismissal of the motion, we affirm.

### I.

On August 28, 1989, Officers McClure and Carroll of the Montgomery County Police Department were dispatched to 815 Thayer Avenue, Silver Spring, Maryland in response to a 911 call transmittal. The caller, a female occupant of the apartment who was later identified as Mary Jane Akers, stated that she had found guns in her boyfriend's closet, that the guns were possibly stolen, and that one had been used by the boyfriend to threaten her. Akers identified her boyfriend as Russell Kinney, the appellant in this case. Prior to placing the call, Akers had waited until Kinney had fallen asleep, taken his keys, opened a locked closet, and discovered the guns. She then relocked the closet and called the police.

The officers were admitted to the apartment by Akers, who confirmed what she had told the 911 operator and said that Kinney was still asleep in the bedroom. She asked the officers to open the closet and remove the guns. The officers initially declined to do so, determining instead to make further inquiry before taking action. They asked Akers if she lived in the apartment and if her name was on the lease.

She replied that she had lived there for four months and was unsure if she was on the lease. Becoming frustrated with the officers' inaction, Akers retrieved Kinney's keys and opened the closet. Among the items inside were a shotgun in plain view and two black bags which Akers removed and opened to reveal additional guns.

The officers handled the guns to the extent necessary to obtain several serial numbers, and then left the apartment to run a check by radio on Kinney and the guns. They discovered that there was an open warrant on Kinney for a parole violation and that one of the guns was stolen. Kinney was arrested and removed from the apartment.

At this point, Akers asked the officers to remove the contents of the closet. Officer Carroll confiscated the guns that had previously been discovered. She also removed and opened a white canvas bag in which she found various items of drug paraphernalia. Inside a kleenex box on a shelf she found a quantity of white powder. A later lab test revealed that the powder was not a controlled substance.

Later on the same day, on the basis of the items recovered from the closet, the police obtained a search warrant and searched the entire apartment. They discovered two additional guns in the apartment and seventy-two packets of heroin in a suitcase in the closet.

The next day Akers was interviewed in detail at the police station. She stated at this time that Kinney had always kept the closet locked and would not tell Akers what was inside. Akers testified at trial that she had never seen inside the closet prior to the day that Kinney was arrested.

Kinney moved to suppress all items of physical evidence recovered by the police. He alleged that Officers McClure and Carroll had conducted an illegal warrantless search. He further sought suppression of the items recovered under the search warrant as being the fruit of the previous unlawful search. Kinney's motion was denied. At trial, Kinney was convicted of Possession with the Intent to Distribute Heroin, 21 U.S.C. § 841(a)(1); Use of a Firearm During a Drug Offense, 18 U.S.C. § 924(c); Possession of a Firearm by a Convicted Felon, 18 U.S.C. § 922(g); two counts of Possession of Unregistered Firearms, 26 U.S.C. § 5861(d); and Possession of a Firearm with an Obliterated Serial Number, 26 U.S.C. § 5861(h). Kinney was sentenced to 393 months of incarceration.

## II.

■ No Fourth Amendment concern is posed by Akers' actions prior to the arrival of the police. The Fourth Amendment is directed exclusively at state action and evidence secured by private searches, even if illegal, need not be excluded from a criminal trial. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *United States v. Mehra,* 824 F.2d 297, 299 (4th Cir.), *cert. denied,* 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 220 (1987).

■ Kinney contends, however, that the second time Akers entered the closet, the presence of the police transformed the nature of the search from a private search to a governmental search. This argument is unsupported by either the facts or the law. Contrary to Kinney's assertions, more than the mere presence of a police officer is necessary to constitute the government action required to implicate Fourth Amendment concerns. For purposes of the exclusionary rule, a private actor must "be regarded as having acted as an 'instrument' or agent of the state," in order for a private search to be considered action by the government. *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). The court below made an explicit factual finding that Akers acted on her own initiative, without suggestion from the police officers, when she opened the closet door. There is nothing in the record that casts doubt on this ruling.

■ Kinney argues that even if the search was originally private in nature, the police, in their subsequent participation, exceeded the scope of the initial private search, thereby making their actions unlawful. Specifically, he argues that by re-

cording the serial numbers on the guns, the police effected an infringement on Kinney's expectation of privacy beyond that occasioned by Akers' private search.

This argument is closely analogous to the argument rejected by the Supreme Court in *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). In that case, Federal Express employees opened a damaged package and discovered a suspiciously wrapped quantity of white powder. They resealed the package and notified the DEA. When the DEA agent arrived, he opened the package, conducted a field test on the powder, and determined it to be cocaine. The Supreme Court held that there was no infringement of the defendant's Fourth Amendment rights. In reopening the package, the government agent's actions were confined to the scope of the previous private search. Any privacy interest possessed by the defendant in relation to the package had been destroyed by the actions of the Federal Express employees. *Id.* at 119, 104 S.Ct. at 1659. Furthermore, and of paramount relevance to the present case, the Supreme Court ruled that the drug field test was not a search within the meaning of the Fourth Amendment, since the only fact that could be determined by the test was whether or not the substance was a controlled substance, and this fact could not be the source of a legitimate expectation of privacy. *Id.* at 122–23, 104 S.Ct. at 1661.

There is no analytically significant reason to view the recording of gun serial numbers in the present case any differently from the drug field test in *Jacobsen.* The only fact that the officers could determine from the serial numbers was whether the guns were contraband. This fact, like the

potentially illicit nature of the substance in *Jacobsen,* cannot be the source of a privacy expectation "that our society is prepared to consider reasonable." *Id.* at 122, 104 S.Ct. at 1661; *accord United States v. Walsh,* 791 F.2d 811 (10th Cir.1986) (government agent's examination of firearms which detected lack of serial numbers was not a search exceeding the scope of a previous private search).*

█ After Kinney's arrest, Officer Carroll returned to the closet where the guns had been found and continued the search. This phase of the search cannot be supported by Akers' prior private search because the fruits of Carroll's search, the white powder and drug paraphernalia, were never discovered by Akers. Instead, the government justifies this portion of the search on a theory of consent.

In retrospect, it is clear that Akers did not have the requisite authority to grant consent to search the closet. Although she had been a joint resident of the apartment for four months prior to the incident in question, there is uncontradicted testimony that Kinney kept the closet locked at all times, and Akers had never seen inside the closet until she secretly opened it while Kinney slept. Under the prior decisions of this court, Akers' lack of mutual use, general access or common authority over the closet prohibited her from issuing valid consent to search it. *United States v. Block,* 590 F.2d 535 (4th Cir.1978).

█ Despite this fact, evidence obtained by the police acting under a reasonable belief that Akers had granted valid consent to the search need not be suppressed. *Illinois v. Rodriguez,* 497 U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). The trial court found that Officer Carroll acted un-

---

* Kinney's reliance on *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), is misplaced. In that case, a police officer lawfully inside a residence to investigate a shooting discovered several stereo components which he suspected of being stolen. His subsequent handling of the components to recover their serial numbers was invalidated as an illegal search, outside the "plain view" exception to the warrant requirement. That case is easily distinguishable from the present facts in that the search of the stereo components was completely

unrelated to the probable cause that had allowed the officer to enter the residence and was unsupported by any independent probable cause. In the present case, the police were invited into the residence to investigate the existence of illegal firearms. Based on the information provided by Akers and the presence of the guns in the apartment, the officers clearly had probable cause and therefore adequate authority under *Hicks,* to examine the weapons for serial numbers.

der such a belief when searching the closet and that, under the circumstances, the belief was reasonable. There is support for this finding in the record. Akers was obviously an inhabitant of the apartment. She had a key to the closet in her possession, and actually opened the door to the closet in the presence of the officers. The closet was located near the front entry to the apartment, in an area that implied general access.

At trial, it did become apparent that the police were aware that Akers had surreptitiously obtained the keys from Kinney while he slept. This fact could have indicated to the police officers that Akers did not have the requisite authority to grant consent to search the closet. However, the trial judge specifically weighed this evidence and declined to alter his earlier decision to dismiss the motion to suppress. According to the court, the fact that Kinney had possession of the keys to a locked closet containing the guns on the particular night in question, in the context of the earlier domestic dispute that had occurred in the apartment, did not negate a reasonable understanding on the part of the officers that Akers ordinarily had authority to enter the closet. This conclusion is not unreasonable.

All of the items of evidence seized by the police prior to obtaining a search warrant were taken under valid exceptions to the warrant requirement. The subsequent application for a search warrant was based exclusively on this validly obtained evidence. Consequently, there is no infirmity in the warrant itself.

### III.

The evidence the government presented against Kinney at trial was obtained in conformance with the Fourth Amendment. Accordingly, the trial court's denial of Kinney's motion to suppress was proper. Kinney's convictions are hereby

AFFIRMED.