8 F.3d 817
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cynthia DAWKINS, Plaintiff-Appellant,
v.
CITY OF CAYCE; Cayce Public Safety Department; Lavern
Jumper; A. G. Dantzler; Ron Byrd; Ellie
Heustess; Officer Stoudemire,
Defendants-Appellees.
 No. 92-2332.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: October 12, 1993.
Decided: October 25, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Matthew J. Perry, Jr., District Judge. (CA-90-2536-3)
 William Gary White, III, Ken W. Lobenstein, Columbia, South Carolina, for Appellant.
 Susan P. McWilliams, Nexsen, Pruet, Jacobs & Pollard, Columbia, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Cynthia Dawkins seeks to appeal the district court's decision for the Defendants in this civil action under 42 U.S.C.s 1983 (1988) and state law, and its denial of Dawkins's post-verdict motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Finding no error, we affirm.
 
 I.
 
 2
 This action stems from Dawkins's arrest for criminal domestic violence and disorderly conduct at her Cayce, South Carolina, apartment, after her boyfriend, Calvin Greely, called the police to report that Dawkins had assaulted and injured him and requested police assistance in retrieving his personal items from the apartment. Following her conviction for these charges in state court,[1] Dawkins filed the present civil rights action under 42 U.S.C. § 1983 (1988) against arresting officers Ron Byrd and Emerson Stoudemire, the City of Cayce, the Cayce Public Safety Department,[2] Chief of Police Lavern Jumper, Deputy Chief of Police A.G. Dantzler, and City Manager Ellie Heustess, alleging that the Defendants violated her constitutional rights during the course of entering her apartment without a warrant and arresting her. She also raised state law claims of false arrest, battery, abuse of process, malicious prosecution, emotional outrage, and trespass.
 
 
 3
 During the course of the subsequent trial, the district court directed a verdict for Stoudemire on the claims of unreasonable search and seizure, invasion of privacy, abuse of process, malicious prosecution, and trespass, and for Byrd on the claims of false arrest, abuse of process, malicious prosecution, and trespass. The court also directed a verdict for the City and the named city officials. The jury returned a verdict for the Defendants as to the remaining issues. Dawkins then filed a motion for judgment notwithstanding the verdict and for new trial, which was construed as a motion for judgment as a matter of law under Fed. R. Civ. P. 50. That motion was denied after a hearing. This timely appeal followed.
 
 II.
 
 4
 Dawkins first argues on appeal that the district court erred in denying her motion for judgment as a matter of law after the jury rendered its verdict, because the officers' warrantless entry into her apartment constituted a clear violation of the Fourth Amendment. However, it appears from this record that the issue of the officers' warrantless entry never went to the jury, but was determined adversely to Dawkins when the district court granted the directed verdict motions of Byrd and Stoudemire. We review directed verdict decisions de novo. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). A directed verdict is appropriate if "there can be but one conclusion as to the verdict that reasonable jurors could have reached." Id. (quoting Wheatley v. Gladden, 660 F.2d 1024, 1027 (4th Cir. 1981)).
 
 
 5
 The facts of this case lead us to the conclusion that the officers had valid consent to enter Dawkins's apartment. Hence, the warrant requirement of the Fourth Amendment was waived. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Consent may be obtained from a third party with common authority over the premises entered and searched. United States v. Matlock, 415 U.S. 164, 171 (1974). A warrantless entry premised on consent is valid, even if the third party later proves not to possess common authority, so long as the officer's belief that such authority existed was reasonable at the time of entry. Illinois v. Rodriguez, 497 U.S. 177, 183-89 (1990); United States v. Kinney, 953 F.2d 863, 866-67 (4th Cir.), cert. denied, 60 U.S.L.W. 3842 (U.S. 1992). Thus, in Kinney, where the defendant's girlfriend called the police while the defendant slept and reported his possession of stolen guns used to threaten her, then opened the gun closet in the apartment using keys taken from his pocket, we found the search of the closet to be reasonable under a consent theory even though the girlfriend did not actually have authority, and notwithstanding the fact that the officers may have known the keys were surreptitiously taken from the defendant at the time they conducted the search. 953 F.2d at 866-67.
 
 
 6
 The facts of this case likewise support the conclusion that the officers reasonably believed Greely had common authority over Dawkins's apartment at the time of the incident, even though Greely may not in fact have lived there on an ongoing basis. Greely, after recounting the domestic dispute with Dawkins and while displaying visible wounds, told Officer Byrd that he lived at Dawkins's apartment and needed help retrieving some of his personal belongings. Dawkins and Greely were no strangers to the police; they had frequent domestic quarrels and had called the police to the apartment several times prior to the incident here at issue. At the time, the police were aware of no other address for Greely. These factors, taken together, pointed to the legitimacy of Greely's claim that he resided with Dawkins. We find that the officers reasonably believed that Greely had authority to consent to their entry, and thus affirm the district court's directed verdict for the Defendants on this issue.
 
 III.
 
 7
 Dawkins next argues that the district court erred in directing a verdict for the Defendants on the issue of the validity of her arrest for criminal domestic violence and disorderly conduct. She asserts that the officers had insufficient evidence on which to base their belief that a crime had been committed, and notes that the conviction for public disorderly conduct was reversed on appeal. The Defendants, citing our decision in Cramer v. Crutchfield, 648 F.2d 943 (4th Cir. 1981), take the view that Dawkins's state court convictions for disorderly conduct and criminal domestic violence conclusively established the existence of probable cause to arrest. We decline to decide whether Cramer stated a rule of preclusion which applies to this case, however, because the facts readily support the existence of probable cause to arrest.[3]
 
 
 8
 Probable cause for arrest exists within the meaning of the Fourth Amendment when "the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985); see also Beck v. Ohio, 379 U.S. 89, 91 (1964). A search warrant must typically be obtained for an arrest inside the arrestee's home, United States v. McCraw, 920 F.2d 224, 230 (4th Cir. 1990); see also Payton v. New York, 445 U.S. 573 (1980), but where entry into the arrestee's home has validly been obtained by other means, as in the present case, an arrest warrant is not required. E.g., Vizbaras v. Prieber, 761 F.2d 1013, 1017 (4th Cir. 1985) (officers did not violate constitution in making warrantless arrest of plaintiff parent's son inside plaintiff's home, where probable cause for arrest existed and plaintiff had consented to entry for questioning), cert. denied, 474 U.S. 1101 (1986). Furthermore, law enforcement officers are authorized by S.C. Code Ann. § 16-25-70 (Law. Co-op. 1985) to arrest without a warrant at the arrestee's place of residence a person who is believed upon probable cause to be committing or to have "freshly committed any misdemeanor or felony under the provisions of [this statute] even if the act did not take place in the presence of the officer."
 
 
 9
 We find that the evidence in this case viewed in the light most favorable to Dawkins adequately established probable cause for her warrantless arrest, whether assessed under the Fourth Amendment standard or pursuant to section 16-25-70. The officers' entry, as noted above, was a valid consent entry not requiring a search warrant. The officers reasonably believed at the time of entry and arrest that Dawkins and Greely were living together, and had visible proof in the form of Greely's injuries to substantiate his claim that Dawkins had injured him in a domestic dispute. Hence, they logically concluded that the criminal domestic violence statute, S.C. Code Ann. § 16-2520, had been violated,[4] and were authorized by Manbeck and section 16-25-70 to make a warrantless arrest. Because the facts of this case point to only one conclusion,[5] Gairola, 753 F.2d at 1285, we affirm the district court's directed verdict for the Defendants on this issue.
 
 IV.
 
 10
 Finally, Dawkins argues that the district court erred in directing a verdict for Jumper, Dantzler, Heustess, and the City of Cayce, because evidence of a pattern of brutality created a jury issue. Dawkins misstates the evidence. Her attorney attempted at length to elicit testimony evincing a pattern of police brutality in the Cayce Police Department, thus meeting the policy or custom requirement of Monell v. Department of Social Servs., 436 U.S. 658 (1978), but was overwhelmingly unsuccessful. The officers either did not remember the incidents mentioned by counsel or did not have enough knowledge of departmental policies and procedures to provide useful testimony. Given the absence of any evidence to support the claims against the City and city officials, and keeping in mind that there is generally no respondeat superior liability unders 1983, Monell, 436 U.S. at 694, a directed verdict on the claims against the City and its named officials was appropriate.
 
 
 11
 For these reasons, we affirm the district court's decisions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The disorderly conduct conviction was reversed on appeal. The criminal domestic violence conviction was never appealed
 
 
 [2]
 The parties later agreed that the Cayce Public Safety Department was not an entity
 
 
 [3]
 To the extent Cramer ever stated a rule of preclusion, its continued validity is questionable in light of our decision in Prosise v. Haring, 667 F.2d 1133 (4th Cir. 1981), and the Supreme Court's affirmance in Haring v. Prosise, 462 U.S. 306 (1983)
 
 
 [4]
 That statute provides:
 It is unlawful to: (1) Cause physical harm or injury to his or her family or household member, (2) offer or attempt to cause physical harm or injury to his or her family or household member with apparent present ability under circumstances reasonably creating fear of imminent peril.
 
 
 [5]
 All parties agreed that Greely was barefoot and shirtless when the police responded to his call. The only dispute was over his physical appearance. The officers testified that Greely had a cut under his bruised eye which was bleeding at the time of their arrival. Dawkins testified that Greely had a scratch by his nose at the time of the incident due to a work injury. Margaret Canty, the apartment manager who unlocked Dawkins's apartment for the police, testified that she noticed no injuries on Greely at the time, but did not elaborate on the circumstances in which her observations were made. Given the other factors supporting the officers' belief that Greely had been injured in a domestic dispute with Dawkins, including Greely's own account of what happened and the fact that he was not fully clothed when the officers met him at the phone booth where he placed the call, the evidence was insufficient to support a jury verdict for Dawkins