Filed 12/14/20  P. v. Hergott CA4/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ALFRED O. HERGOTT, Defendant and Appellant. | G058887 (Super. Ct. No. 16WF3110) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer and Cheri Pham, Judges.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Alfred O. Hergott was convicted by a jury of possession of child pornography. On appeal, defendant argues the trial court erred in denying his motion to suppress the contents of his cell phone, and in refusing to suppress certain statements he made to police before being advised of his *Miranda* rights.[1] We agree regarding the contents of his cell phone but disagree as to his pre-*Miranda* statements to the police. We also conclude both claimed errors are harmless and therefore affirm.

## FACTS

After a church sponsored surf lesson at Bolsa Chica State Beach, someone handed the instructor a cell phone that had been found on the beach. The phone was a black Alcatel smart phone with no passcode. The instructor took the cell phone home, where his wife looked through it. She opened the photo folder on the cell phone and viewed the first two or three images, which were pornographic images including children. She delivered the cell phone to her pastor, and told him what it contained. The pastor, in turn, delivered it to the Huntington Beach Police Department, and advised them of what it contained.

The cell phone was booked into found property in the department's property unit, and left for a month and a half, after which officer Richard Bee investigated it. Bee first reviewed the text messages and contacts in the phone and determined the cell phone's number. Then, in order to locate the owner and to investigate for child pornography, Bee looked at the first three pictures in the cell phone's photo album. The photos were pornographic images of children.

Bee used the results of this search to obtain a search warrant for the cell phone. The search uncovered approximately 4,000 deleted images, most of which were child pornography, and 25 intact images of child pornography.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

After the search, Bee determined defendant was likely the owner of the cell phone and contacted him near his church.  Bee was accompanied by several other officers initially, and proceeded to interview defendant in the presence of one other officer.[2]  Bee asked defendant a series of questions about the cell phone, including whether it was his, whether he had lost it, and what it contained.  Bee told defendant he had found child pornography on defendant's cell phone, and asked defendant to give him an explanation for its presence on the phone.

After defendant initially denied knowledge, Bee told defendant "it's up to you if you want to be honest with me or not," and "I can tell by your body language right now you're a little stand offish and kind of evasive. . . .  I just want to get your side of the story.  I'm saying . . . don't think you're a bad guy. . . .  I understand you . . . you probably have a history with this stuff. . . .  [¶] . . . [¶] So I'll let you explain to me what's goin' on with your phone [*sic*] images on your phone."  Defendant then admitted downloading the images.

Bee asked a series of follow up questions.  When defendant denied the extent of the child pornography (specifically, the existence of 4,000 deleted images on the phone), Bee said "I kinda want you to be honest with me right now like I said before I want to understand you better.  And I've been nothing but curious with you."[3]  As the interview continued, Bee and the other officer present continued to press defendant to be

---

[2]  There appears to be some confusion about the number of officers present at various times.  In his testimony, Bee identified four other officers that were involved in the encounter with defendant.  Defendant testified there were a minimum of six officers present—Bee and another interviewing him, plus a minimum of four officers searching his vehicle.

[3]  The word "curious" is repeated in defendant's response "Okay.  I been curious with you."  The quotations are taken from a transcription of the interview, which in combination with the context, suggests the word may have been "courteous," not "curious."

honest, and accused him of evasiveness and lying.  At the conclusion of the interview, Bee arrested defendant.  Bee conducted a follow up interview at the Huntington Beach police station after advising defendant of his *Miranda* rights.  Defendant confessed again.

The initial interview took place on the sidewalk in a residential neighborhood.  Defendant was standing.  Bee described the tone of the conversation as "[c]alm" and "civil."  During the conversation, several additional officers searched defendant's vehicle, pursuant to a previously obtained search warrant.

After defendant was charged, two separate evidentiary hearings were held, the first before Judge David A. Hoffer and the second before Judge Cheri Pham.  The first hearing concerned Bee's initial warrantless search of the cell phone, and the second concerned defendant's statements to Bee prior to receiving his *Miranda* warnings.  At the conclusion of the first hearing, Judge Hoffer concluded the prosecution had shown by a preponderance of the evidence that defendant had abandoned his cell phone and no longer retained a reasonable expectation of privacy in it by the time of Bee's search.  At the conclusion of the second hearing, Judge Pham concluded defendant was not in custody for most of the interview with  Bee prior to the arrest, but excluded a portion of the interview, which included many of the officers' exhortations to defendant to be honest.

At trial, the surf instructor's wife testified about her discovery of child pornography on the cell phone.  Another Huntington Beach police officer testified about the search of the cell phone.  Another member of defendant's church testified defendant told her he lost his cell phone and was "really nervous and concerned."  Bee testified about his search of the phone and the images he saw, as well as his interview with defendant.  Bee also testified he conducted a second interview with defendant at the Huntington Beach police station.  A recording of certain portions of the interview at the police station was played for the jury.  Defendant did not testify.

4

At the conclusion of the trial, the jury found defendant guilty.  Defendant was sentenced to 364 days in county jail and five years of probation, and was ordered to register as a sex offender.  Defendant timely appealed.

**DISCUSSION**

*1. The Search of the Cell Phone*

        *a. Abandonment*

Defendant argues the trial court erred by finding he had abandoned his cell phone at the time of Bee's initial search.  We agree.

In general, before accessing data stored on a cell phone, law enforcement officers must obtain a search warrant.  (*Riley v. California* (2014) 573 U.S. 373, 388.)  But abandoned property may be searched by law enforcement without a warrant because there is no reasonable expectation of privacy in such property.  (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365 (*Daggs*).)

"'"Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other *objective* facts.  [Citations.]  Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search."'"  (*Daggs, supra*, 133 Cal.App.4th at pp. 365-366, italics omitted.)  "'The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence.'"  (*People v. Parson* (2008) 44 Cal.4th 332, 346.)

Abandonment is determined based *only* on the facts known to law enforcement at the time of the search.  (*United States v. Small* (4th Cir. 2019) 944 F.3d 490, 501.)  Evidence uncovered by the police later has no bearing on whether the property was abandoned, and therefore whether the search was reasonable and constitutionally permissible.  (*Ibid.*)

The facts known to Bee at the time of his initial search were these. A cell phone had been lost on the beach. It was found and turned over to a church surf instructor, who took it home. The surf instructor's wife accessed the cell phone and discovered child pornography. The surf instructor delivered the cell phone to the church's pastor, who delivered it to police and relayed the above information. The cell phone then sat in police custody for a month and a half.

None of this is evidence of abandonment.

The evidence the trial court relied upon to find abandonment was defendant's failure to ask the surf instructor if he found the cell phone. This evidence cannot establish abandonment for two reasons. First, at the time of the search Bee knew nothing about whether the surf instructor had been contacted by someone looking for the cell phone. The trial court therefore could not consider this evidence for this purpose. Second, the record does not support the trial court's finding. The pastor of the church testified he knew defendant had lost his cell phone, and that it had come up in conversation around that time.

The prosecution argues *Daggs* supports a finding of abandonment. In *Daggs*, the defendant dropped his phone during an altercation with a store clerk while fleeing a robbery. (*Daggs, supra*, 133 Cal.App. 4th at p. 364.) Police arrived on the scene and found the phone, then booked it into evidence when no one claimed it after 20 to 30 minutes. (*Ibid.*) One week later, with no one having attempted to claim the phone, the investigating detective searched the phone (specifically, by removing the battery to observe its serial numbers and determine its ownership.) (*Ibid.*) The defendant argued he had dropped the phone through inadvertence, rather than a voluntary act, and had therefore not abandoned it for Fourth Amendment purposes. (*Id.* at 365.) The trial court and Court of Appeal disagreed, pointing out the defendant had consciously decided (for obvious reasons) not to attempt to reclaim the phone even though he knew where it was. (*Ibid.*)

6

Here, unlike in *Daggs*, the phone was not abandoned while fleeing the scene of a crime, but instead was misplaced while at the beach. "[T]he simple loss of a cell phone does not entail the loss of a reasonable expectation of privacy." (*United States v. Small, supra*, 944 F.3d at p. 502.) Moreover, again unlike in *Daggs*, defendant had no reason to believe the cell phone was in police custody, and therefore no reason to go to the police to reclaim it—a fact the trial court itself acknowledged. *Daggs* is inapposite.

The prosecution also argues the lack of a password or passcode on the phone shows the absence of a reasonable expectation of privacy in the phone's contents, or a diminished expectation of privacy. But this argument runs directly afoul of the Supreme Court's seminal opinion on the subject, *Riley*, in which the court held a warrant was required to search the contents of a "flip phone," which did not have a password. (*Riley, supra*, 573 U.S. 373, 379, 401.)

In sum, there was no substantial evidence of abandonment.

*b. Alternative Theories*

To save the search, the prosecution points to Penal Code section 1546.1, which permits the government to "[a]ccess electronic device information by means of physical interaction . . . with the electronic device . . . [i]f the government entity, in good faith, believes the device to be lost, stolen, or abandoned, provided that the entity shall only access electronic device information in order to attempt to identify, verify, or contact the owner or authorized possessor of the device."[4] (Pen. Code, § 1546.1, subds. (a)(3), (c)(6).) We question (but do not decide) whether the 2015 enactment of this statute by the Legislature modified the public's reasonable expectation of privacy in their cell phones for Fourth Amendment purposes.

But more importantly, the statute does not apply. Bee testified he accessed the phone "[i]n an attempt to locate the owner . . . as well as I received information that

_____

[4] At the time of the search, this section was numbered Penal Code section 1546.1, subdivision (c)(6), but was otherwise unchanged.

[*sic*] was possibly child pornography on the phone." The statute only permits access for the *sole* purpose of determining ownership. Bee's dual purpose search was outside the scope of the statute.

The prosecution also argues the search was permissible because it did not exceed the scope of the private search conducted by the surf instructor's wife. The burden falls on the prosecution to prove this justification for the search. (*People v. Michael E.* (2014) 230 Cal.App.4th 261, 268.) The trial court made no findings on this issue, specifically declining to reach it. The surf instructor's wife testified she inspected the contact list and at least two, but possibly three photographs in the photo album. Bee testified he examined the text messages, the settings on the cell phone (to determine the phone number), and three images. Thus, the record demonstrates Bee's search exceeded, at least in some particulars, the scope of the surf instructor's wife's search. Absent factual findings by the trial court on the portions of the search that were unlawful, we cannot rely on this justification to save the results of the search, and were it not for our finding of harmless error discussed below, we would be forced to remand to the trial court for further proceedings on this point. (See *People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1574.)

Last, the prosecution argues the doctrine of inevitable discovery saves the search. "Under the inevitable discovery doctrine, illegally seized evidence may be used where it would have been discovered by the police through lawful means." (*People v. Robles* (2000) 23 Cal.4th 789, 800.) But the inevitable discovery doctrine does not apply when officers have probable cause to apply for a warrant but fail to do so. (*People v. Superior Court* (*Corbett*) (2017) 8 Cal.App.5th 670, 684-685.) And Bee plainly had probable cause before he searched the cell phone because the cell phone had been turned in to the police specifically because it contained child pornography.

We conclude there is no permissible basis for affirming the trial court's denial of defendant's motion to suppress.

*2. The Pre-Miranda Interview*

   *Miranda* advisements are not required if the interrogation is noncustodial. (*People v. Mickey* (1991) 54 Cal.3d 612, 648.) "'An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."' [Citations.] Whether a person is in custody is an objective test; the pertinent question being whether the person was formally arrested or subject to a restraint on freedom of movement of the degree associated with a formal arrest. [Citation.] '[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances.'" (*People v. Linton* (2013) 56 Cal.4th 1146, 1167.)

   The totality of the circumstances must be considered, including at least "whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation. [Citations] [¶] No one factor is dispositive. Rather, we look at the interplay and combined effect of all the circumstances to determine whether on balance they created a coercive atmosphere such

that a reasonable person would have experienced a restraint tantamount to an arrest." (*People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1162.)

"""In considering a claim that a statement or confession is inadmissible because it was obtained in violation of a defendant's rights under *Miranda* . . . , the scope of our review is well established. 'We must accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if they are substantially supported. [Citations.] However, we must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statement was illegally obtained.'" [Citation] "'Although we independently determine whether, from the undisputed facts and those properly found by the trial court, the challenged statements were illegally obtained [citation], we "'give great weight to the considered conclusions' of a lower court that has previously reviewed the same evidence."'" [Citation.]'" (*People v. Delgado* (2018) 27 Cal.App.5th 1092, 1104.)

Here, in addition to the facts set forth above, defendant testified Bee had, before turning on his audio recorder, threatened defendant with arrest and impoundment of his car if he refused to talk, and had used a forceful, aggressive tone. But after reviewing the audio transcript and video, the trial court found this testimony was not credible. Therefore, we do not consider it, despite defendant's protestations. Instead, our analysis is based solely upon Bee's account of the encounter and the transcript of the audio recording in the record.

Turning now to the *Aguilera* factors, the record reveals contact with defendant was initiated by the police. There is no indication in the transcript of the interview or in Bee's testimony that defendant volunteered to participate; instead, the transcript begins with Bee telling defendant where to stand (while other officers were searching defendant's car), and shortly thereafter, telling defendant "I'm actually here to talk to you about your lost phone," and "there's a couple things on that phone that are a little concerning to me." The purpose of the interview was not expressed to defendant,

10

which cuts in favor of a finding of noncustody.[5] The interview took place on a residential street, not at the police station. The police did not advise defendant he was under arrest.

The interrogating officers never told defendant he was free to leave, and defendant's conduct did not manifest an understanding that he was free to leave. Defendant was not handcuffed or otherwise restrained during the interview. The interrogation lasted approximately 25 minutes. Two officers conducted the interview. Bee controlled the interview, repeatedly pressuring defendant to be "honest" and accusing him of "evasive" behavior. The police manifested a belief that defendant was guilty and that they had the evidence to prove it. We defer to the trial court's finding that the officers were not confrontational or aggressive in tone and were calm and collected. The police did use interrogation tactics to pressure defendant (pressuring him to be "honest" and not "evasive," giving him a "chance" to tell his side of the story, and offering to "help" him if he confessed ) and arrested him at the conclusion of the interview.

Thus, the *Aguilera* factors are numerically closely balanced, with the arguably most important factor, lack of physical restraint, weighing strongly against custody. So, giving the appropriate weight to the trial court's similar conclusion, we conclude defendant was not in custody during the disputed portion of the interview.

### a. Harmless Error

As set forth above, we find only one of defendants' two contentions meritorious, namely that the contents of the cell phone should have been excluded.

---

[5] The trial court asserted defendant "wasn't even a suspect at that time when [Bee] contacted him." This was plainly an error. At the time of the interview, Bee had already obtained a search warrant for defendant's vehicle, which would only be sensible if defendant were a suspect. And Bee testified he already believed defendant was the owner of the cell phone before the interview, based on evidence developed from the text messages on the cell phone and research on Facebook. However, we do not consider the officer's subjective intent, but instead consider the facts known to *defendant*, which do not include the officer's prior investigative efforts.

11

Nevertheless, even if the contents of the cell phone and defendant's pre-*Miranda* statements should have been excluded, we would still affirm.

*Miranda* error is reviewed under the "'harmless beyond a reasonable doubt'" standard. (*People v. Aguilera, supra*, 51 Cal.App.4th at p. 1166.) Admission of unlawfully seized evidence is analyzed under the same standard. (*People v. Kraft* (2000) 23 Cal.4th 978, 1036; *People v. Rich* (1988) 45 Cal.3d 1036.)

Defendant's post-*Miranda* confession, the admission of which defendant does not challenge, is more than enough to render defendant's claimed errors harmless, especially in combination with the testimony of the surf instructor's wife. After being given his *Miranda* warnings, defendant expressly and repeatedly admitted downloading child pornography to the cell phone, which he admitted was his. These express admissions of all the elements of the offense made the rest of the evidence redundant and irrelevant, and made any error in admitting the cell phone's contents or defendant's pre-*Miranda* statements harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.


THOMPSON, J.

I CONCUR:


ARONSON, J.


12

Moore, J., Concurring.

I disagree with the majority. I would find the officer's warrantless search of defendant's cell phone to be reasonable under the Fourth Amendment.

The officer's search of the phone's photo album to look for possible child pornography (three images) did not appear to exceed the scope of the surf instructor's wife's private search of the phone's photo album (two or three images). (See *People v. Michael E.* (2014) 230 Cal.App.4th 261, 268 ["'[A]dditional invasions of . . . privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search'"]; see also *United States v. Runyan* (5th Cir. 2001) 275 F.3d 449, 464-465 [police did not exceed the scope of a private search by examining more files (images) on computer disks than had been revealed in the private search of those same disks].)

Further, the officer's unchallenged testimony was that he only searched the phone's text messages and settings to access information about the identity of its owner. (See Pen. Code, § 1546.1, subd. (c)(7), italics added ["government entity may access electronic device information by means of physical interaction . . . with the device . . . [¶] … [¶] [i]f the government entity, in good faith, believes the device to be lost, stolen, or abandoned, provided that the entity shall *only access electronic device information* in order to attempt to identify, verify, or contact the owner . . . of the device"]; see also *Illinois v. Krull* (1987) 480 U.S. 340, 360-361, fn. 17 ["a good-faith exception [exists] when officers reasonably rely on statutes and act within the scope of those statutes"].)

I agree defendant's statements were properly admitted; thus, I would not reach the issue of harmless error.

In all other respects, I concur with the majority.


MOORE, ACTING P. J.


13